UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARCY LISAMARIE LOCKARD,<br><br>                Plaintiff,<br>  v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>                Defendant. | Case No. 3:11-cv-06050-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for August 31, 2012 |

      Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

      On October 1, 2008, plaintiff filed an application for disability insurance benefits, and on October 10, 2008, she filed another one for SSI benefits, alleging in each application she became disabled as of September 30, 2008, due to speech and hearing problems, blindness in her left eye,

REPORT AND RECOMMENDATION - 1

heart problems, degenerative disc disease, and depression. See Administrative Record ("AR") 10, 117, 124, 150. Both applications were denied upon initial administrative review on March 17, 2009, and on reconsideration on June 29, 2009. See AR 10. A hearing was held before an administrative law judge ("ALJ") on January 4, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 25-54.

On January 27, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 10-20. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 28, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On December 23, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on March 6, 2012. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues that defendant's decision should be reversed and that this matter should be remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred in evaluating the opinions of James Parker, M.D., and Thomas Clifford, Ph.D. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in evaluating the opinions of these two medical sources and thus in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

REPORT AND RECOMMENDATION - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent

REPORT AND RECOMMENDATION - 3

with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the following mental residual functional capacity:

> **. . . The claimant is . . . limited to performing simple, repetitive tasks with only occasional interaction with co-workers and supervisors, and no interpersonal contact with members of the general public.  Lastly, the claimant is limited to low stress jobs which are defined as jobs that do not involve strict production quotas, more than occasional adaptation to changes in the workplace, or the exercise of discretionary decision-making authority.**

AR 16 (emphasis in original).  In assessing plaintiff with the above RFC, the ALJ found in relevant part as follows:

> The claimant has . . . a history of some anxiety and depression.  Effexor has been prescribed for the claimant and appears to have been reasonably affective in controlling the claimant's moderate level [of] psychological symptoms.  She is not currently seeing a counselor and is not under the care of a psychiatrist or psychologist.  Nevertheless, significant mental limitations have been imposed in this case restricting the claimant to simple, repetitive tasks with only occasional interaction with co-workers and supervisors, and no interpersonal contact with members of the general public.  The claimant has likewise been limited to performing low stress jobs which are defined as jobs that do not involve strict production quotas, more than occasional adaptation to changes in the workplace, or the exercise of discretionary decision-making authority.  These restrictions are based upon the report of Dr. Parker, the [Disability Determination Services] consulting psychologist who examined the claimant on February 14, 2009 (Exhibit 8F).  The undersigned specifically notes that Dr. Parker also commented that the claimant "would likely not be able to sustain accurate repetitive tasks at this point as she [sic] emotionally fragile."  However, Dr. Parker's comments to this affect are entitled to only modest weight.  His comments reflect the fact that the claimant's husband had died unexpectedly just one week prior to the exam.  She was experiencing an intense grief reaction at that time which eventually ameliorated.  When she testified at the hearing, the claimant acknowledged that she has ultimately successfully coped with her husband's death and that she had begun to move forward with her life.  Dr. Parker's comments at the time of his assessment are therefore entitled [to] only minimal weight since they do not fairly represent the claimant's long-term level of psychological adjustment.  While the claimant certainly has some ongoing anxiety and depression, she remains capable of competitive work activity within the context of the psychological limitations imposed in this case.

REPORT AND RECOMMENDATION - 4

AR 17-18.

Plaintiff argues that in stating Dr. Parker's comments regarding the unlikelihood that she would be able to sustain accurate repetitive tasks at this point was not fairly representative of her long-term level of psychological adjustment, the ALJ employed the "wrong standard" in determining if this assessed inability to perform repetitive tasks met defendant's 12-month durational requirement for establishing disability. ECR #11, pp. 4. As plaintiff notes, 20 C.F.R. § 404.1520(a)(4)(ii) states:

> At the second step [of the sequential disability evaluation process][1], we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509[2], or a combination of impairments that is severe and meets the duration requirement [in 20 C.F.R. § 404.1509], we will find that you are not disabled. . . .

She argues that in couching his rejection of Dr. Parker's opinion within the context of her "long-term level of psychological adjustment," the ALJ failed to apply the proper standard for finding whether her assessed repetitive task limitation lasted the requisite 12 months. At the same time the ALJ, plaintiff asserts, implicitly found such to be the case by determining her depression and anxiety to be severe impairments at step two. See AR 12.

But the mere fact that the ALJ found plaintiff to have severe mental impairments at step two, does not mean that he found they met the 12-month duration requirement for establishing

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.

[2] Pursuant to 20 C.F.R. § 404.1509, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months," otherwise known as "the duration requirement."

REPORT AND RECOMMENDATION - 5

disability. A step two severity finding, furthermore, does not at all necessarily imply a finding that the duration requirement has been met. Indeed, 20 C.F.R. § 404.1520 clearly states that to be found disabled, a claimant's medically determinable impairments or combination thereof not only must be "severe" but also must meet the duration requirement. See id. ("If you do not have a severe . . . impairment *that* meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe *and* meets the duration requirement [in 20 C.F.R. § 404.1509], we will find that you are not disabled.") (emphasis added).

That is, it is not enough to have a severe impairment, it also must be at least 12 months in duration. In addition, as pointed out by defendant, not only must the impairment itself last or be expected to last for 12 months, but those work-related limitations stemming therefrom alleged to be disabling also must last for the requisite time period. See Barnhart v. Walton, 535 U.S. 212, 217-222 (2002) (upholding defendant's interpretation of Social Security Act's definition of "disability" as requiring that both medically determinable impairment *and* resulting inability to engage in substantial gainful activity must last for "not less than 12 months"); Carmickle v. Commissioner Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) (upholding decision by ALJ to give physician's opinion regarding inability to tolerate sedentary or light work "little weight" in assessing claimant's "long-term functioning" in light of that physician's decision two months later to release claimant to full-time work).

In this case, as the ALJ noted, plaintiff's husband died just a week before she was evaluated by Dr. Parker. See AR 307. In his evaluation report, Dr. Parker opined in relevant part that:

> She has lapses of concentration and would likely not be able to sustain accurate repetitive tasks at this point in time and she is emotionally fragile.
>
> . . . The claimant is in the midst of a major life crisis right now. Before the

REPORT AND RECOMMENDATION - 6

> death of her husband her functioning had not been very good as a result of
> depression, anxiety, and also physical problems. With her reduction in her
> Effexor to stretch the supply, she will likely get worse. With proper support
> her prognosis would be average.

AR 309. Plaintiff argues Dr. Parker's statement that she will likely get worse with the reduction in her medication, indicates her assessed mental functional limitations would last longer than the 12-month duration requirement. But as noted by the ALJ, at the hearing – which was held on January 4, 2010, *less* than 12 months after Dr. Parker gave his opinion – plaintiff testified that she was able to successfully cope with her husband's death and move on with her life. See AR 18, 43-44.

     Plaintiff further argues that Dr. Parker's statement that her functioning had "not been very good" before her husband died, also indicates her assessed inability to work may have extended back to her alleged onset date of disability, and thus satisfied the duration requirement. Dr. Parker clearly stated, however, that plaintiff would be unable to perform accurate repetitive tasks "at this point in time" – that is, after the death of her husband. In other words, while he did state that plaintiff's functioning had not been very good prior to her husband's death, Dr. Parker elaborated no further on that statement, and certainly gave no indication that plaintiff would not be able to perform such tasks during that prior period. Further, even if Dr. Parker's statements may not be entirely conclusive on this issue, the ALJ's interpretation thereof here is reasonable, and thus will not be overturned.[3]

     Plaintiff next argues the ALJ improperly rejected the opinion of Thomas Clifford, Ph.D., a non-examining, consultative psychologist, who – after summarizing Dr. Parker's findings and

---

[3] The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 7

opinion – found in relevant part as follows in the mental residual functional capacity assessment ("MRFCA") form he completed March 2, 2009:

> . . . Despite the [claimant's] symptoms currently, by 9/09 she retains the ability to :
>
> . . . Understand, remember and carry out simple instructions.  [The claimant] might have some difficulty persisting through a normal work week/day but should be able to do so.
>
> . . . [The claimant] is able to work w/ a sup[ervisor], a few coworkers[,] but would do best with limited public contact.
>
> . . . [The claimant] would do best w/ a predictable routine.

AR 319. Specifically, plaintiff argues the ALJ erred in rejecting Dr. Clifford's opinion as to her ability to understand, remember and carry out simple instructions prior to September 2009. But Dr. Clifford did not provide any opinion as to plaintiff's ability to do so prior to September 2009, that the ALJ was required to adopt. That is, the only mental limitations Dr. Clifford assessed that the ALJ was required to consider are those set forth above, which Dr. Clifford expressly found to apply to the period subsequent thereto.[4]  Given that Dr. Clifford relied on Dr. Parker's evaluation report in forming his opinion, and that as discussed above the ALJ did not err in interpreting that report and findings contained therein, here too the undersigned finds no error in the way the ALJ treated Dr. Clifford's opinion. Nor is that opinion inconsistent with the RFC with which the ALJ assessed plaintiff.

---

[4] Dr. Clifford's narrative assessment is contained in Section III ("FUNCTIONAL CAPACITY ASSESSMENT") of the MRFCA form he completed. See AR 319. He did check boxes in Section I ("SUMMARY CONCLUSIONS") of that form indicating the presences of some more specific moderate mental functional limitations – although it should be noted that he found plaintiff to be not significantly limited in the ability to understand, remember and carry out very short and simple instructions (see AR 317-18) – but pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity (']RFC[']."** POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original). Although it is true that the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nor are there any valid reasons for not following that directive in this case.

REPORT AND RECOMMENDATION - 8

CONCLUSION

Based on the foregoing discussion and plaintiff's failure to show the ALJ committed any error in evaluating the above medical evidence, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 31, 2012**, as noted in the caption.

DATED this 10th day of August, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9